# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY MONTE; PHIL MONTE; and PATRICIA MONTE,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF LODI; LODI POLICE DEPARTMENT; OFFICER B. FREEMAN, badge 14; OFFICER J. LADO, badge 101; AUSTIN BLYTHE, badge 36; and DOES 1 through 25, inclusive,<br><br>Defendants. | No. 2:17-cv-00411 MCE DB<br><br>**MEMORANDUM AND ORDER** |

On February 23, 2017, Plaintiffs Anthony Monte, Phil Monte, and Patricia Monte filed their Complaint alleging violations of 42 U.S.C. § 1983 and containing pendent state law claims arising from Anthony Monte's February 26, 2016, arrest for violating California Vehicle Code § 23152 (DUI), and California Penal Code § 834a (resisting arrest). Compl., ECF No. 1. Defendants City of Lodi, also sued as Lodi Police Department, and Officers Brian Freeman, Jordan Lado, and Austin Blythe move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Mot. Dismiss, ECF No. 11.

///

1

On August 25, 2017, this Court issued a minute order noting that "[i]n violation of Eastern District of California Local Rule 230(c), Plaintiffs [had] failed to file an opposition or a statement of non-opposition" to Defendants Motion to Dismiss, vacating a scheduled hearing, and ordering "Plaintiffs . . . to show cause in writing . . . why this case should not be dismissed with prejudice." ECF No. 12. Defendants responded to the Court's order on September 5, 2017, ECF No. 14, and filed their opposition the same day, ECF No. 15. On October 6, 2017, the Court discharged its order to show cause and provided Defendants leave to reply to Plaintiffs' opposition no later than October 20, 2017. ECF No. 18. Defendants timely replied. ECF No. 19. For the following reasons, Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.

## BACKGROUND[1]

According to the Complaint, on February 26, 2016, Officers Freeman, Lado, and Blythe ("the Officers") arrived at Plaintiffs' apartment complex after tracking a vehicle they believed to have been in an accident. The Officers observed Anthony Monte ("Anthony") inside the complex's security gate and requested that he open the gate for them.[2] Anthony complied, and the Officers subsequently noticed the vehicle that Anthony had been driving was damaged.

After the Officers observed Anthony demonstrating physiological signs they claimed were indicative of intoxication, they initiated a DUI investigation and Anthony agreed to perform field sobriety tests and to take a preliminary alcohol screening test. Officer Blythe returned to his patrol car to retrieve the testing device. Anthony then took out his cell phone to call his family inside one of the complex's apartments because he wanted non-Officer witnesses as to his level of intoxication. Officers Freeman and Lado

---

[1] Unless otherwise indicated, the following recitation of facts is derived, at times verbatim, from Plaintiffs' Complaint.

[2] Although the Court typically utilizes the parties' last names, it has departed from its ordinary naming convention because Plaintiffs share a surname.

told Anthony that he was not allowed to call for witnesses and that he needed to put his phone away. Anthony refused to put his phone away and continued to attempt to call his family.

Officers Freeman and Lado responded to Anthony's continued use of his phone by grabbing his arm as he was making the call. They then "performed a leg-sweep maneuver" on Anthony, causing him to fall and hit his head on the pavement, after which Officer Freeman got on top of Anthony. Both officers grabbed Anthony's head, "push[ing] downwards repeatedly," causing forceful contact between Anthony's head and the pavement. As a result of this conduct, Anthony bled from his face and his wounds later scarred. Defendant Freeman then handcuffed Anthony.

By this point, Anthony's family had come out of their house. Plaintiffs contend that Phil Monte ("Phil") was approximately fifteen to twenty feet away from where Anthony lay on the ground and watched without interfering. Officer Lado nonetheless approached Phil and "struck him twice in the chest with his finger," telling him to back away.

Having apparently finished with Phil, Officers Freeman and Lado thereafter lifted Anthony by his elbows while he was still handcuffed with his arms behind his back. Officer Freeman then purportedly "slammed Anthony . . . against the back of the squad car and placed his hands on Anthony['s] neck, restricting Anthony['s] . . . ability to breathe." He then instructed Officer Blythe to include in the police report a recommendation to charge Anthony with violation of California Penal Code § 148 (resisting arrest), which Officer Blythe subsequently did.

One or more of the Officers decided to tow the damaged vehicle, which was not visible from the public road or sidewalk, explaining to Patricia Monte ("Patricia"), the owner of the vehicle, that this was pursuant to Lodi policy for vehicles involved in accidents. After the vehicle was towed, it was never searched and no items were seized from the vehicle. Patricia was required to pay hundreds of dollars to the tow yard and to Lodi Police Department to have the car released.

Anthony was charged with violating California Vehicle Code § 23152(a), (b) (DUI) and California Penal Code § 148(a) (resisting arrest). During the criminal proceedings against Anthony, the San Joaquin County District Attorney agreed to consider a defense offer to plead to DUI in exchange for dismissal of the charge of resisting arrest, but insisted on speaking with Officer Freeman first. After speaking with Officer Freeman, the District Attorney purportedly told defense counsel that Officer Freeman had insisted that Anthony agree to a stipulation that Officer Freeman had probable cause to believe that Anthony resisted arrest. Anthony refused to stipulate, and the matter was set for trial. The case was subsequently transferred to Stockton, where a new District Attorney was assigned the case. The new District Attorney agreed to dismiss the count for resisting arrest, and Anthony pled to DUI.

As a result of these events, Anthony contends he suffered severe emotional distress resulting in loss of sleep, nervousness, and anxiety among other symptoms and has required professional mental health services.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal citations and quotations omitted). A court is not required to accept as true a

"legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")). However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); see also Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Group, Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**ANALYSIS**

The Complaint is comprised of eight causes of action, which, for clarity, the Court sets forth in the following table:

///

| CAUSE OF ACTION | PLAINTIFF | DEFENDANT |
|---|---|---|
| **I.** 42 U.S.C § 1983 | Anthony | All |
| **II.** Assault & Battery | Anthony | Lado, Freeman, and City |
| **III.** False Arrest | Anthony | All |
| **IV.** Intentional Infliction of Emotional Distress | Anthony | All |
| **V.** 42 U.S.C § 1983 | Phil | Lado, Freeman, and City |
| **VI.** Assault & Battery | Phil | Lado, Freeman, and City |
| **VII.** 42 U.S.C § 1983 | Patricia | All |
| **VIII.** Trespass to Chattel | Patricia | All |

For their part, Defendants contend the entire Complaint should be dismissed because: (A) the City of Lodi is an improper defendant to this suit; (B) there was no false arrest, the force used to arrest Anthony was objectively reasonable, and the officers are entitled to qualified immunity; (C) a "leg sweep," without more, cannot constitute excessive force; (D) Anthony pled guilty to DUI and thus cannot plead a false arrest claim; (E) Plaintiff's Intentional Infliction of Emotional Distress ("IIED") claim rests on conclusory statements and insufficient allegations; (F) the force used against Phil was trivial and reasonable; (G) the vehicle was lawfully towed; and (H) Patricia, is now deceased and thus is an improper plaintiff. Some, but not all, of these arguments are well taken.

### A. <u>Monell</u> Liability Attaches Only to the Seventh and Eighth Causes of Action

"Congress did not intend municipalities to be held liable [under 42 U.S.C § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, . . . a municipality cannot . . . be held liable under § 1983 on a <u>respondeat superior</u> theory." <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 691 (1978); <u>see also</u> Mot. Dismiss at 5:2–6:4.

///

"Plaintiffs agree that dismissal of the City of Lodi is proper with regard to the claims made by Anthony . . . and Phil," Opp'n at 3:6–7, but argue that Monell liability is appropriate for Patricia's claims in causes of action seven and eight. More specifically, Plaintiffs contend:

> [A] large number of officers present may have been involved in the decision to tow the vehicle or at least were present and failed to object to the wrongful towing of the vehicle. The City of Lodi has failed to train its officers in the requirement to obey the Constitution even when statute might authorize a certain action. California statutes and Lodi City Codes are subordinate to the United States Constitution and Lodi City Police officers appear to not understand this.

Id. at 3:10–16. This conclusory argument notwithstanding, Plaintiffs allege in the Complaint that one of the officers said that "the vehicle was being towed pursuant to Lodi policy because it had been involved in an accident." Compl. ¶ 35 (emphasis added). Liberally construed, this is enough at the pleading stage to survive a motion to dismiss.

All causes of action in the Complaint, except for the seventh and eighth, are DISMISSED as to the City of Lodi (and duplicatively named Lodi Police Department).

### B. The First Cause of Action States a Claim for Excessive Force Upon Which Relief Can Be Granted

In the first cause of action, Anthony alleges his "right to not be subject to excessive force was violated by [Officers] Freeman and Lado multiple times at the scene of the incident," Compl. ¶ 1-1, and that his "right to not be subject to False Arrest was violated when [Officer] Freeman instructed [Officer] Blythe to include Penal Code 148 as a basis for the arrest," id. ¶ 1-2. Defendants contend that dismissal is proper because there was no false arrest, the force used to arrest Anthony was objectively reasonable, and the officers are entitled to qualified immunity. Mot. Dismiss at 6:20–11:21. For the reasons set forth in subsection D below, Anthony cannot show he was improperly seized by way of a false arrest. But the Complaint's factual allegations sufficiently allege the force used during his arrest was unreasonable.

7

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988). "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." Graham v. Connor, 490 U.S. 386, 394 (1989). A claim of excessive force to effect arrest is analyzed under a Fourth Amendment objective reasonableness standard. See Scott v. Harris, 550 U.S. 372, 381 (2007); Tennessee v. Garner, 471 U.S. 1, 7–22 (1985). This is not a mechanical test. Instead, "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

According to Defendants, "[Anthony] fail[ed] to plead facts that [Officers Freeman] and [Lado] used any force more than that associated with a 'leg sweep maneuver' and that which was necessary to effectuate his arrest." Mot. Dismiss at 8:23–25. "It was only after [Anthony] failed to cooperate by using his phone during the DUI investigation and refusing to put it away did the officers use minimal force in order to ensure that [Anthony] be arrested for DUI." Id. at 9:18–22. This description of "minimal force" that was "necessary" understates the allegations plainly pleaded, let alone liberally construed. As alleged, Anthony refused to put away his cell phone and, in response: (1) Officers Freeman and Lado "performed a leg-sweep maneuver" on Anthony causing him to fall and hit his head on the pavement, Compl. ¶ 21; (2) Officer Freeman then got on top of Anthony, both officers grabbed Anthony's head, and they "pushed downwards repeatedly" causing forceful contact between his head and the pavement, id. ¶ 22–23; and (3) Officer Freeman then "slammed Anthony . . . against the back of the squad car and placed his hands on Anthony['s] neck, restricting Anthony['s] . . . ability to breathe,"

id. ¶ 30. As alleged, and in the light most favorable to Anthony, Officer Freeman and Lado's conduct was not reasonable as judged against the Graham factors from the perspective of a reasonable officer on the scene. See Graham, 490 U.S. at 396. Anthony's initial refusal to put away his cellphone represents a level of resistance, but at the pleading stage there is no indication of continued resistance justifying additional force. Further, the crime to which Anthony pleaded guilty was not one of violence and had concluded before the Officers confronted him. There is no indication Anthony posed a safety risk to officers or others.

The law "provid[es] government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987). Qualified immunity may not apply although "the very action in question has [not] previously been held unlawful." Anderson, 483 U.S. at 640. The question is simply whether "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640. Although courts should endeavor to "resolv[e] immunity questions at the earliest possible stage in litigation," Hunter v. Bryant, 502 U.S. 224, 227 (1991), at this early stage, construing the Complaint in Anthony's favor, the Court cannot apply the privilege. It was clearly established at the time that the use of this alleged force was excessive, and so reasonable officers at the scene would not have thought their actions consistent with the Fourth Amendment. See, e.g., Hansen v. Black, 885 F.2d 642, 645 (9th Cir. 1989) ("[T]he officers used excess force on Hansen by unreasonably injuring her wrist and arm as they handcuffed her."). As such, Anthony states a claim for excessive force in his first cause of action.

Defendants' Motion to Dismiss Plaintiffs' first cause of action is GRANTED without leave to amend to the extent it is based on a false arrest theory and DENIED to the extent it is based on a claim of excessive force.

///

### C. The Second Cause of Action States a Claim Upon Which Relief Can Be Granted

In the second cause of action, Anthony alleges assault and battery out of the same operative facts giving rise to the first cause of action. Compl. ¶¶ 2-1 through 2-7. A person commits battery if he acts with intent to cause harmful or offensive contact, or apprehension thereof, and the contact occurs. Garcia v. United States, 826 F.2d 806, 810 (9th Cir. 1987). When the defendant is a police officer acting within the scope of his or her duties, a plaintiff "must prove unreasonable force as an element of the tort." Edson v. City of Anaheim, 63 Cal. App. 4th 1269, 1272 (1998). In moving to dismiss this cause of action, Defendants renew their reasonable force arguments employed above. For the same reasons already explained, however, Anthony's second cause of action states a claim for assault and battery.

Defendants' Motion to Dismiss Plaintiffs' second cause of action is DENIED.

### D. The Third Cause of Action is Dismissed

In the third cause of action, Anthony alleges he was falsely arrested. Compl. ¶¶ 3-1 through 3-6. Defendants argue Anthony's "arrest was not wrongful because he admits that he was charged [with] and pled to DUI." Mot. Dismiss at 13:17–18. Without pointing to any support in the case law, Anthony asserts that while he "was lawfully arrested" for DUI, he was nonetheless simultaneously "falsely arrested and accused of violating Penal Code 148." Opp'n at 3:19–4:10.

Under California law, "[t]here shall be no civil liability on the part of, and no cause of action shall arise against, any public officer . . . for false arrest or false imprisonment arising out of any arrest that is lawful or that the public officer or employee, at the time of the arrest, had reasonable cause to believe was lawful." Cal. Penal Code § 836.5. So long as the Officers had probable cause to arrest Anthony for DUI, his arrest would not later be found unlawful if probable cause were lacking as to some other offense. See Blankenhorn v. City of Orange, 485 F.3d 463, 473 (9th Cir. 2007); Schmidlin v. City of Palo Alto, 157 Cal. App. 4th 728, 776-777 (2007) (dictum); see also Barna v. City of

Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994) ("As long as the officers had some reasonable basis to believe [the § 1983 plaintiff] had committed a crime, the arrest is justified as being based on probable cause. Probable cause need only exist as to any offense that could be charged under the circumstances."). Because Anthony concedes he was lawfully arrested for DUI, he cannot claim that he was simultaneously falsely arrested on another charge.

Defendants' Motion to Dismiss Plaintiffs' third cause of action is GRANTED without leave to amend.

### E. The Fourth Cause of Action is Dismissed

In the fourth cause of action, Anthony alleges "Officer Blythe included a recommendation on the police report to charge violation of Penal Code 148 for improper purposes," Compl. ¶ 4-3, and that "Officer[s Freeman and Lado] engaged in acts of unprovoked and unlawful physical violence toward Anthony . . . while wearing [their] uniform[s]," id. ¶¶ 4-4, 4-5. Anthony alleges this "conduct was extreme and outrageous and caused severe emotional distress for [him]," leading him to experience "loss of sleep, nervousness, and anxiety among other symptoms" which have "required professional mental health services." Id. ¶ 45.

> The elements of a cause of action for intentional infliction of emotional distress [("IIED")] are (i) outrageous conduct by defendant, (ii) an intention by defendant to cause, or reckless disregard of the probability of causing, emotional distress, (iii) severe emotional distress, and (iv) an actual and proximate causal link between the tortious conduct and the emotional distress.

Nally v. Grace Cmty. Church, 47 Cal. 3d 278, 300 (1988). To be "outrageous," conduct "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community," Davidson v. City of Westminster, 32 Cal. 3d 197, 209 (1982), and "[s]evere emotional distress [is] distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." Fletcher v. W. Nat'l Life Ins. Co., 10 Cal. App. 3d 376, 397 (1970).

///

11

The Court need not address the nature of Defendants' conduct because Anthony's allegation that his emotional distress "result[ed] in loss of sleep, nervousness, and anxiety among other symptoms" and his contention that this caused him to "require[] professional mental health services," Compl. ¶ 45, is not sufficient to state a case for IIED. IIED requires "distress of such substantial quantity or enduring quality that no reasonable man in a civilized society should be expected to endure it." Fletcher, 10 Cal. App. 3d at 397. The court cannot determine this from the cursory nature of the Complaint, even liberally construed. The severity of symptoms and duration of treatment is unknown.

Defendants' Motion to Dismiss Plaintiffs' fourth cause of action is GRANTED with leave to amend.

### F. The Fifth and Sixth Causes of Action Are Dismissed

In the fifth and sixth causes of action, Phil alleges a violation of 42 U.S.C § 1983, assault, and battery. He alleges "[Officer] Lado approached [him] and struck [him] twice in the chest telling him to not interfere with the arrest of Anthony." Compl. ¶ 5-6. From elsewhere in the Complaint, it becomes apparent that Officer Lado struck Phil "with his finger." Id. ¶ 27. According to Defendants, this contact was trivial and did not amount to unreasonable force under the circumstances. Mot. Dismiss at 16:11–18:17.

Whether under the rubric of 42 U.S.C § 1983 or battery, Phil must demonstrate excessive or unreasonable force. Compare Scott, 550 U.S. at 381, with Edson, 63 Cal. App. 4th at 1272. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. Under the circumstances of controlling the scene in the midst of an ongoing arrest, the conduct as alleged appears trivial, not rising to the level of unreasonable or excessive force.

Defendants' Motion to Dismiss Plaintiffs' fifth and sixth causes of action is GRANTED with leave to amend.

///

### G. The Seventh and Eighth Causes of Action State Claims Upon Which Relief Can Be Granted, but Substitution is Required Pursuant to Fed. R. Civ. P. 25(a)(1)

In the seventh and eighth causes of action, Patricia alleges a violation of 42 U.S.C § 1983 and trespass to chattels, respectively. Liberally construed, Patricia alleges the Officers towed her vehicle even though Anthony was not initially stopped while inside the vehicle, Compl. ¶ 9, it "was lawfully parked," id. ¶ 34, and it "was not visible from any vantage point along the public road or sidewalk," id. ¶ 33.

Defendants, on the other hand, contend the car was lawfully towed pursuant to California Vehicle Code § 22651, which permits towing "[w]hen an officer arrests a person driving or in control of a vehicle for an alleged offense and the officer is, by this code or other law, required or permitted to take, and does take, the person into custody." Cal. Veh. Code § 22651(h)(1). Patricia counters that reliance on § 22651(h)(1) is misplaced in light of the lack of community caretaking rationale present under the circumstances and the lack of any purported rationale to obtain or preserve evidence. Opp'n at 12:11–13:17. Patricia also quotes People v. Williams, in which a division of the California Court of Appeals wrote:

> [The officer] impounded appellant's car under Vehicle Code section 22651, subdivision (h)(1) because "the driver in control of that vehicle was being arrested." The residence in front of which appellant parked the car was appellant's own residence, which [the officer] knew at the time. The car was legally parked, though it was some distance away from the curb. It was not a traffic hazard. [The officer] knew the car was legally parked. Other cars were also parked on the street. [The officer] had no reason to believe that the car had been stolen or that appellant did not legally possess it. [The officer] admitted the car could have been locked and left right where appellant parked it, but he did not give appellant the opportunity to do so. He immediately decided to impound the car.

145 Cal. App. 4th 756 (2006). In addition, unlike in Morton, liberally construing the Complaint, Anthony was not stopped while inside his vehicle. Thus, there is some question whether the statute applies at all absent some argument that Anthony was still "in control of [the] vehicle." Cal. Veh. Code § 22651(h)(1). For these reasons, dismissal

13

is inappropriate.

Defendants, however, also contend that dismissal is proper because Patricia passed away on May 28, 2017, and no motion has been filed to substitute a proper party pursuant to Federal Rule of Civil Procedure 25(a)(1). Plaintiffs agree that a motion for substitution is needed, but explain Plaintiffs "prefer[] to wait until the ruling on this motion so that the first amended complaint will not require repeated filings." Opp'n 1:28–2:2.

Under Federal Rule of Civil Procedure 25(a)(1), a party has ninety days "after service of a statement noting [a] death" to file a motion for substitution. In Grandbouche v. Lovell, the Tenth Circuit reversed a District Court order granting a defense motion to dismiss a deceased plaintiff's suit—where counsel had failed to file a suggestion of death or a motion to substitute a party—because the lack of formally served and filed suggestion of death meant the ninety-day limitation period had not run. 913 F.2d 835, 836 (10th Cir. 1990) cited with approval in Barlow v. Ground, 39 F.3d 231, 233 (9th Cir. 1994). "The running of the ninety-day limitations period under Rule 25(a)(1) is not triggered unless a formal suggestion of death is made on the record, regardless of whether the parties have knowledge of a party's death." Id. "If a party . . . desires to limit the time within which another may make the motion, he may do so by suggesting the death upon the record." Fed. R. Civ. P. 25, 1963 Amendment Notes. However, "[a] motion to substitute may be made by any party or by the representative of the deceased party without awaiting the suggestion of death. Indeed, the motion will usually be so made." Id. No formal suggestion of death has yet been filed, and Defendants' Motion to Dismiss the seventh and eighth causes of action is DENIED as premature.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 11) is GRANTED in part and DENIED in part as follows:

///

14

1. All causes of action except for the seventh and eighth are DISMISSED without leave to amend as to the City of Lodi (and the duplicatively named Lodi Police Department).

2. Defendants' Motion to Dismiss Plaintiffs' first cause of action is GRANTED without leave to amend to the extent it is based on a false arrest theory and DENIED to the extent it is based on a claim of excessive force.

3. Defendants' Motion to Dismiss Plaintiffs' second cause of action is DENIED.

4. Defendants' Motion to Dismiss Plaintiffs' third cause of action is GRANTED without leave to amend.

5. Defendants' Motion to Dismiss Plaintiffs' fourth, fifth, and sixth causes of action is GRANTED with leave to amend.

6. Defendants' Motion to Dismiss Plaintiffs' seventh and eighth causes of action is DENIED.

Not later than twenty (20) days following the date this Memorandum and Order is electronically filed, Plaintiffs may, but are not required to, file an amended complaint. If Plaintiffs fail to timely file an amended complaint, the causes of action dismissed by virtue of this Order will be deemed dismissed with prejudice upon no further notice to the parties. In addition, by that same date, Plaintiffs shall file any Motion to Substitute a proper party in Patricia's place pursuant to Rule 25. Failure to file such a Motion will result in the dismissal of Patricia's claims with prejudice, again with no further notice to the parties.

IT IS SO ORDERED.

Dated: April 26, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE